IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RODNEY JERMAINE** | : | |
| **JOHNSON,** | : | **CIVIL NO. 1:13-CV-00278** |
| | : | |
| **Petitioner** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD BURNS, et al.,** | : | |
| | : | |
| **Respondents** | : | |

**M E M O R A N D U M**

Petitioner Rodney Jermaine Johnson ("Johnson"), who is presently incarcerated

at the State Correctional Institution in Camp Hill, Pennsylvania, initiated this action

by filing a *pro se* petition for writ of habeas corpus pursuant to the provisions of 28

U.S.C. § 2254.  (Doc. 1.)  In the petition, Johnson challenges his 2009 convictions and

sentence in the Court of Common Pleas of York County, Pennsylvania ("trial court"

or "York County court").  For the reasons that follow, the petition will be denied.

**I.    Background**

On May 13, 2009, Johnson was found guilty of two counts of rape, one count of

aggravated assault, one count of simple assault, two counts of involuntary deviate

sexual intercourse, and one count of aggravated indecent assault following a jury trial

in the York County court.  (Doc. 11-2 at 386.)  The trial court summarized the relevant

facts as follows:

> In the early morning hours of August 10, 2008, [Johnson] went to the home of his estranged wife, Barbara Friday, and initiated a harrowing physical and sexual assault upon her, while their three children were in the house, that lasted several hours through the night and into the next morning.  At the time, an active protection from abuse ("PFA") order had been in place to protect Ms. Friday from [Johnson].  [Johnson] informed Ms. Friday that if she did not do what he wanted, that he would hurt her and their children, asleep upstairs.
>
> After several incidents of sexual abuse in the living room of her home, [Johnson] forced Ms. Friday into the basement where he again forced himself on her, yelling at her, and punching her about the head.  At some point, [Johnson] attempted to stab Ms. Friday in the chest, but she was able to move and the blade went into Ms. Friday's left shoulder.  Another sexual assault followed the stabbing, and only after Ms. Friday was able to find her ACCESS 911-cellphone [sic] and charge its dead battery, was she finally able to contact police and end her ordeal; the police arrived at the residence around 10:00 a.m.  When the police arrived, they had to make a forcible entry into the home because [Johnson] refused to allow them to enter . . . .  The police took [Johnson] into custody.

(Doc. 11-4 at 146-47.)  On August 26, 2009, the trial court sentenced Johnson to an

aggregate term of incarceration of twenty-eight (28) to fifty-six (56) years.  (*Id.* at 14-

15.)  On August 28, 2009, Johnson filed a "Motion in Arrest of Judgment and Motion

for a New Trial" *pro se*, though he was still represented by counsel, which raised

numerous issues of varying degrees of legal cognizability.  (*Id.* at 27.)  On the same

day, Johnson also filed an "Addendum Direct Appeal" and a "Petition to Terminate

Court Appointed Councel" [sic] *pro se*. (*Id.* at 34-44, 51-52.) On September 1, 2009,

Johnson filed a "Motion to Modify Sentence" *pro se*. (*Id.* at 54-55.) None of these

motions were ruled on by the trial court.

On September 4, 2009, Johnson's counsel filed post-sentencing motions for a

new trial and to modify the sentence. (*Id.* at 58-61.) In these counseled motions,

Johnson argued that the verdict was not supported by the weight of the evidence, in

part because Ms. Friday's testimony was not credible, and that the trial court's

sentence exceeded the applicable sentencing guidelines. (*Id.*) These motions were

denied on September 28, 2009. (*See Id.* at 67.)

On October 8, 2009, Johnson filed a counseled direct appeal with the Superior

Court of Pennsylvania ("Superior Court").[1] (*Id.* at 69.) His appeal raised the

following issues: 1) the jury's verdict was against the weight of the evidence in that:

A) the alleged victim's testimony was inconsistent, and B) no physical evidence was

recovered from the knives allegedly used in the assault; and 2) the trial court abused

---

[1] During the pendency of his appeal, the Superior Court remanded the case for a hearing
to determine whether Johnson knowingly, willingly, and intelligently waived his right to counsel,
pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). (Doc. 11-4 at 86.) At its *Grazier*
hearing on February 17, 2010, the trial court determined that Johnson did, in fact, desire to be
represented by an attorney, and that, although he was not satisfied with the counsel appointed to
him, he would "have the same issues with whatever lawyer represents him." (*Id.* at 91-92.)

3

its discretion by fashioning a sentence that exceeded the standard and aggravated

ranges under the sentencing guidelines.  (*Id.* at 112.)  On September 22, 2010, the

Superior Court affirmed the sentence, finding that the trial court did not abuse its

discretion in refusing to award a new trial based on the weight of the evidence, nor in

fashioning a sentence beyond the aggravated range of the sentencing guidelines.  (*Id.*

at 159-168.)  On March 1, 2011, the Supreme Court of Pennsylvania denied Johnson's

Petition for Allowance of Appeal.  (Doc. 11-5 at 169.)

On January 7, 2010, and March 17, 2010, Johnson filed two *pro se* petitions for

relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat.

Ann. §§ 9541 *et seq.*  (*Id.* at 170, 216.)  These petitions were denied by the trial court,

now acting as the PCRA court, because they were filed during the pendency of

Johnson's appeal.  (*Id.* at 215, 332.)

On March 21, 2011, after his petition for appeal was denied by the Supreme

Court of Pennsylvania, Johnson filed another PCRA petition.  (Doc. 11-6 at 3.)  This

petition also raised numerous issues, among them that his trial counsel was ineffective

for: 1) not seeking suppression of the knives allegedly used in the assault as the fruit

of an illegal search (*Id.* at 35); 2) not objecting to the district attorney "fil[ing]

criminal charges out of [an] indirect criminal contempt complaint" arising from a

Protection From Abuse ("PFA") order (*Id.* at 60); 3) not objecting to the violation of

Johnson's right to privacy when Johnson and his wife were required to speak about

sexual acts in public proceedings (*Id.* at 64); and 4) failing to subpoena witnesses on

his behalf (*Id.* at 71).

On October 7, 2011, a supplemental PCRA petition was filed by court-

appointed counsel for Johnson, which focused on the claim that Johnson's trial

counsel failed to subpoena witnesses on his behalf.  (*Id.* at 79.)  The PCRA court held

a hearing on the same day, where Johnson and his trial counsel testified.  (*Id.* at 82.)

At the end of the hearing, the court denied Johnson's petition.  (*Id.* at 149.)

On October 12, 2011, Johnson filed an appeal of the PCRA court's ruling.  (*Id.*

at 150.)  This appeal was quashed on March 27, 2012, for failure to comply with the

briefing requirements of the Pennsylvania Rules of Appellate Procedure.  (*Id.* at 190-

91.)  Johnson subsequently petitioned the Supreme Court of Pennsylvania for an

allowance of appeal, and this petition was denied on October 11, 2012.  (*Id.* at 192.)

On October 24, 2012, Johnson petitioned the York County court for a new trial, and

on October 29, 2012, his petition was denied.  (*Id.* at 193, 196.)  On November 13,

2012, Johnson appealed the denial of his petition.  (*Id.* at 197.)  On April 19, 2013, his

appeal was dismissed for failure to file a brief.  (*Id.* at 208.)

Johnson timely filed the instant petition for writ of habeas corpus on February

5, 2013.  (Doc. 1.)  He also filed an addendum with additional exhibits on May 7,

2013.  (Doc. 10.)  Respondents filed a response on June 3, 2013.  (Doc. 11.)  Thus,

this matter is now ripe for disposition.

## II.   Discussion

In his petition, Johnson appears to raise the following claims:[2]

1.  The trial court exceeded its authority, and violated Johnson's due
process rights, by never holding a hearing on the alleged PFA violation
for which he was initially taken into custody, and instead proceeding with
a criminal trial on other charges;

2.  The trial court imposed multiple sentences for the same crime, in
violation of the Fifth Amendment's Double Jeopardy clause;

3.  Johnson was prejudiced by two statements the trial judge made to
the jury when instructing them on how to weigh evidence;

4. Johnson was denied a fair trial when he testified before the jury
wearing a prison inmate bracelet;

5.  Johnson's counsel rendered ineffective assistance by:

---

[2] Johnson's petition is written disjointedly, with much of it taking the form of bald
assertions accompanied by citations to irrelevant cases, so it is difficult to discern the precise claims
that were intended.  As Johnson is proceeding *pro se*, this court has made every effort to construe the
petition liberally and generously, and has thus included even those claims that were not clearly
labeled as grounds for the petition.  *See*, *e.g.*, *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010)
("A habeas corpus petition prepared by a prisoner without legal assistance may not be skillfully
drawn and should thus be read generously.").

a.  failing to object to any of the above issues;

b.  failing to move to suppress the knives as evidence seized as part of an illegal search;

c.  allowing Johnson to testify while wearing a prison inmate bracelet;

d.  not obtaining discovery from the prosecution;

e.  failing to subpoena witnesses on Johnson's behalf;

f.  excluding information about past PFA charges from the jury;

g.  making a statement in his opening remarks that prejudiced his own client; and

h.  failing to move to suppress the DNA test results.

(Doc. 1 at 9-10, 14-16.)  In their response, Respondents contend that Johnson's claims

are unexhausted because he failed to present them to the state courts before seeking

federal habeas corpus review.  (Doc. 11 at 7-10.)  Respondents also contend that none

of Johnson's claims have merit, arguing that his claim regarding the PFA hearing is

incoherent (*Id.* at 10-11), his claims of ineffective assistance of counsel do not meet

the *Strickland* standard (*Id.* at 11-14), and any prejudice he suffered by revealing his

inmate bracelet was both minimal and the result of his own choice to show the jury the

wedding ring he kept attached to it (*Id.* at 14-16).  Because this court finds that

Johnson's claims are procedurally defaulted, it finds it unnecessary to reach the merits of his petition.

### A.   Exhaustion of State Court Remedies

Outside certain narrow exceptions, state prisoners are required to exhaust all available state court remedies for their claims prior to submitting those claims for federal habeas corpus review.  28 U.S.C. § 2254(b).  In order to fulfill this requirement, federal constitutional claims must be "fairly presented" to the state courts, meaning that the petitioner must present the same factual and legal basis for the claim to the state court to put the court "on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  While a petitioner need not cite "book and verse" of the United States Constitution, *Picard v. Connor*, 404 U.S. 270, 277 (1971), the petitioner's state court pleadings must present "the legal theory and supporting facts asserted in the federal habeas petition in such a manner that the claims raised in the state courts are 'substantially equivalent' to those asserted in the federal court." *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996).  The mere similarity of a claim raised in the state courts with one in a federal habeas petition is insufficient to consider the federal claim exhausted.  *Picard*, 404 U.S. at 276.  "It is not enough that all the facts necessary to support the federal claim were

before the state courts, or that a somewhat similar state-law claim was made."

*Anderson v. Harless*, 459 U.S. 4, 6 (1982). The petitioner has the burden of

establishing that the exhaustion requirement has been met. *Ross v. Petsock*, 868 F.2d

639, 643 (3d Cir. 1999); *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may

review the merits of a state petitioner's claim prior to exhaustion when no appropriate

state remedy exists. *Christy v. Horn*, 115 F.3d 201, 206 (3d Cir. 1997); *Doctor*, 96

F.3d at 681; *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995). Nevertheless, a

petitioner shall not be deemed to have exhausted state remedies if he has the right to

raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

## B.    Procedural Default

If a petitioner presents unexhausted habeas claims to a federal court, but state

procedural rules bar further state court review, the federal court will excuse the failure

to exhaust and treat the claims as exhausted. *Wenger v. Frank*, 266 F.3d 218, 223 (3d

Cir. 2001); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*,

489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are

considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991);

*Lines*, 208 F.3d at 160.

A federal habeas court cannot review the merits of defaulted claims unless the petitioner demonstrates that either: (1) there is "cause" for the procedural default and the alleged violation of federal law resulted in "actual prejudice"; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750; *Caswell v. Ryan*, 953 F.2d 853, 857, 861-62 (3d Cir. 1992). To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. *Coleman*, 501 U.S. at 750. To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Once "cause" has been successfully demonstrated, a petitioner must then prove "prejudice." "Prejudice" must be something that "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. *See Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000). A

credible allegation of "actual innocence" constitutes a "miscarriage of justice" that

enables a federal court to hear the merits of otherwise procedurally defaulted habeas

claims.  *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004).  The fundamental

miscarriage of justice exception, as defined by the United States Supreme Court, is

confined to cases of actual innocence as compared to legal innocence, where the

petitioner can show that it is more likely than not that no reasonable juror would have

found him guilty beyond a reasonable doubt in light of new evidence.  *Schlup v. Delo*,

513 U.S. 298, 327 (1995).  "To be credible," a claim of actual innocence must be

based on reliable evidence not presented at trial.  *Id*. at 324.

### C.    Analysis

In the instant petition, none of Johnson's claims have been exhausted, as they

were not fairly presented to each level of the state courts.  Johnson's failure to exhaust

his claims stems from two separate omissions he made during his PCRA litigation:

the first relating only to his claim regarding the DNA swab, and the second relating to

all of the other claims in the instant petition.  The court will analyze each omission

separately.

First, Johnson's claim regarding the DNA swab was not raised in his March 21,

2011 PCRA petition. This claim was instead raised for the first time on appeal from

the PCRA court's decision.  (Doc. 11-6 at 3-78, 154.)  Because Johnson failed to raise

this claim before each level of the state courts, this claim remains unexhausted.

In contrast to his DNA swab claim, all of Johnson's other claims were raised in

his PCRA petition (*Id.* at 3-78), yet none of them were "fairly presented" to the

Superior Court in his appeal, as is required by 28 U.S.C. §2254(c).  While some of the

same factual elements could be found in his Concise Statement of Errors, they were

not accompanied by any indication that Johnson intended them to be the basis of a

federal claim.  (*See* Doc. 11-6 at 153-155.)  For example, Johnson's statement of

errors repeatedly mentions the fact that the trial court did not hold a contempt hearing

pursuant to Pennsylvania's Protection From Abuse Act, but makes no mention of his

theory that this violated his federal right to due process, referring instead only to state

statutes.  (*Id.* at 153-54.)  The only point in his appeal where Johnson even cites the

United States Constitution (or any federal law) is when he asserts his claim regarding

the DNA swab, which is of no avail, since this claim was not present in his PCRA

petition.  Aside from the DNA swab claim, the Superior Court could not have

ascertained the federal nature of any of Johnson's claims, meaning they were not

"fairly presented" to the Superior Court for its review.  *See Baldwin v. Reese*, 541 U.S.

27, 32 (2004) ("[A] state prisoner does not 'fairly present' a claim to a state court if

that court must read beyond a petition or a brief. . . that does not alert it to the presence of a federal claim in order to find material. . . that does so.").

Thus, because Johnson did not fairly present his federal constitutional claims before each level of the state courts, the court will deem all of his claims to be unexhausted. Further, because it appears that any successive PCRA petition filed by Johnson would be untimely, *see* 42 Pa. Cons. Stat. Ann. § 9545(b) (petition must be filed within one year of the date judgment becomes final), Johnson's claims are procedurally defaulted. *See Coleman*, 501 U.S. at 749. As set forth above, the court cannot review procedurally defaulted claims absent a showing of cause and prejudice, or a miscarriage of justice.

Johnson has failed to raise any argument for why this court should review his claims despite their procedural default. Nevertheless, the court will examine the record to see if there is any indication of cause for Johnson's failure to exhaust his state court remedies. With respect to his DNA swab claim, there is no indication that Johnson's failure to raise it in his PCRA petition was caused by anything external to his defense. Johnson drafted the initial petition on his own, and was given the opportunity at the end of the PCRA hearing to raise any additional issues he had, yet he did not raise this issue. (Doc. 11-6 at 137). Johnson does not allege that any state

officials interfered with his petition, nor that there were any other extraordinary

circumstances.  Based on the record, the court must conclude that there is no external

cause for Johnson's failure to raise his DNA swab claim in his PCRA petition.  Since

Johnson has not made the requisite showing of cause for his failure to raise his DNA

swab claim in his PCRA petition, the court will not address the issue of prejudice.  *See*

*Smith v. Murray*, 477 U.S. 527, 533 (1986).

There is similarly no indication of an external cause for Johnson's failure to

fairly present the federal nature of the remainder of his claims before the Superior

Court.  Johnson was clearly capable of framing his claims in federal terms, as he did

so in his PCRA petition, and he alleges no extraordinary circumstances or interference

by state officials with his appeal, so the only apparent cause would be Johnson's own

choice or negligence.  Since Johnson has not made the requisite showing of cause for

his failure to fairly present his federal claims before the Superior Court, the court will

not address the issue of prejudice.  *See id*.

Johnson has also not asserted that the court's failure to consider any of the

claims in his petition will result in a fundamental miscarriage of justice.  The court

further notes that none of Johnson's claims appear to involve the introduction of new

14

evidence that would be necessary for this exception to procedural default.[3]  On a

generous reading of Johnson's petition, the only evidence that he could proffer as new

would be the testimony of several witnesses that his attorney did not subpoena for

trial. Yet, the transcript of Johnson's PCRA hearing reveals that his attorney did not

subpoena any witnesses because he was not able to find most of the individuals that

Johnson claimed would offer favorable testimony, and that those he did find who

knew Johnson were unwilling to testify.  (Doc. 11-6 at 101-106.)  The court is

unconvinced, based on the record before it, that these witnesses could offer new

testimony sufficient to satisfy the very high standard for a showing of actual

innocence, especially considering that Johnson does not even claim that these

witnesses were there during the time of the assault. Thus, Johnson has not

demonstrated that a fundamental miscarriage of justice will result from failure to

review his claims.


## III.   Conclusion

---

[3]  In order to make a showing of actual innocence, a petitioner must satisfy a two-part test that requires the submission of *new* evidence, unavailable at trial, as well as a showing that no reasonable juror would have convicted the petitioner in light of that new evidence. *Donner v. Cameron*, 955 F. Supp. 2d 410, 420 (M.D. Pa. 2013).

Since Johnson has not shown either 1) cause and prejudice or 2) a fundamental

miscarriage of justice, the court must consider his claims to be procedurally defaulted,

and will thus deny the petition for writ of habeas corpus.  (Doc. 1.)

The court must now determine whether a certificate of appealability should

issue.  A court may issue a certificate of appealability only if the petitioner "has made

a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

This requires that the petitioner "demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000).  Here, the court denies a certificate of

appealability because jurists of reason would not find it debatable that Johnson's

petition must be denied due to the procedural default of all of his claims.

An appropriate order will issue.


                                        s/Sylvia H. Rambo
                                        United States District Judge

Dated:  July 8, 2014.